## STRAUSS v. COMMISSIONER OF INTERNAL REVENUE (two cases).
### No. 8766.

Circuit Court of Appeals, Ninth Circuit.

June 20, 1938.

Henry C. Clausen, of San Francisco, Cal., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewell Key, Berryman Green, and Lester Gibson, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The petitioners Strauss and wife seek a review of a decision of the Board of Tax Appeals denying exemption from Federal income tax in respect of compensation paid to Strauss by the Golden Gate Bridge and Highway District.

The case involves income for the years 1933 and 1934. The sole question presented is whether the income was received by Strauss as an officer (engineer) of the district, or as an independent contractor. Strauss died during the pendency of the proceeding in this court and a special administratrix was substituted. For convenience, however, Strauss will be referred to as petitioner.

The district is a public corporation organized under an act of the legislature of the state of California (Stats. 1923, p. 452, Gen.Laws 1931, Act 936). It was formed in 1928 for the purpose of con-

* The section has been superseded by the Act of May 14, 1930, ch. 274, § 7, 18 U.S.C.A. § 753f.

structing and operating a bridge over the Golden Gate between the city of San Francisco and Marin County. The enabling act provides for a board of directors to be appointed by the supervisors of the counties in which any portion of the included territory is located. This governing board is authorized to appoint a general manager and subordinate officers, and to fix their salaries. The officers shall serve "at the pleasure of the board."

Under the caption "Duties of Officers", § 12 of the act provides that "the engineer shall have, under the direction of the general manager, full charge of the constructions and of the works of the district." The board may require the engineer, as well as other officers, to give bond. § 13 makes it the duty of the board, the general manager, and all other officers, to prepare engineering and financial plans for the purpose of putting into operation the project for which the district is organized.

In August, 1929 the board of the Golden Gate district adopted a resolution appointing petitioner engineer "provided that suitable arrangements can be made with the said Joseph B. Strauss for his compensation and services as such engineer." The petitioner thereupon took the oath required of public officers; and in December following furnished a bond of $5,000 reciting his appointment as engineer for a term beginning the fifteenth of December, 1929, and until his successor is elected and qualified. The bond provides for the performance by petitioner of "all official duties required of him by law, and all such additional duties as may hereafter be imposed on him as such officer by any law of the State of California, Golden Gate Bridge and Highway District."

In October, 1929 an elaborate written contract was entered into between petitioner and the district. The former agreed to conduct all engineering work embraced in the project until the bridge was placed in operation. He undertook to furnish all the necessary engineering talent and material required for this purpose, including the services of such of his subordinates as might be necessary to plan, supervise, and complete the construction of all engineering features. He agreed to include within his services the engineering talent necessary to complete all approaches and other appurtenances, to bear the expense of necessary surveys, studies, investigations, and the preparation of plans and specifications. Other services are enumerated, to be performed either by petitioner or by his assistants, all at petitioner's expense. Included in these is the engineering field work and the maintenance of a competent resident engineer on the ground throughout the construction, together with such assistants and subordinates as might be necessary to prosecute the work without delay or inconvenience.

The contract fixed his compensation at 4% of an estimated cost of $27,000,000 for the construction of the bridge, or total fees of $1,080,000, less certain deductions not material here. Provision was made for the payment of the reasonable value of petitioner's services in the event of the occurrence of certain contingencies, including the contingency of the termination of the contract by reason of the death of the engineer, "or his inability, arising from any cause, to further perform his duties to the satisfaction of the board," or in the event of the failure of the electors to vote the necessary bonds.

During the period of construction petitioner had an office adjoining that of the district and also an office at the site of the work. The expense of maintaining these offices he himself paid. He employed the Strauss Engineering Corporation, an Illinois concern of which he was president, to assist him in making the plans and estimates, for which he paid the corporation out of his own fees approximately $419,500. Until the bridge was completed he devoted all his working time to his duties as engineer for the district, although the contract did not require it. In 1933 he received compensation under his contract in the amount of $210,756.83, and in 1934 he was paid $183,783.85, these amounts being paid out of the proceeds of the sale of bonds. He did not include the amounts as taxable income in his returns for those years, claiming that they were immune from Federal income tax. He did, however, claim as deductions the expenses incident to his employment as engineer.

The case has been presented here both by the Commissioner and the taxpayer on the assumption that the Golden Gate Bridge and Highway District is a political subdivision of the state, exercising an essential governmental function; and that, if the compensation of petitioner was paid him as an officer of the district, it is im-

mune from Federal tax.* The position of the Government is that the compensation was received by petitioner as an independent contractor, and not as an officer, and such was the decision of the Board of Tax Appeals. Since we are of the opinion that the Board was correct, it will be unnecessary to consider whether the treasury regulation quoted in the footnote was effectual, or to determine the constitutional question whether salaries of officers of this district are or are not taxable by the Federal government. Compare Helvering, Commissioner, v. Gerhardt, and companion cases, 58 S.Ct. 969, 82 L.Ed. ——, decided by the Supreme Court on May 23, 1938.

The enabling act under which the district was organized provides for the office of engineer. It is clear that the petitioner was regularly appointed to this office and that he qualified as such officer. However, it does not necessarily follow that the amounts paid him by the district were received in his capacity as an officer. As a matter of fact, the governing board chose to arrange for his services on a different basis. The attorney for the district, testifying on behalf of petitioner, explained the reason for this in an illuminating fashion. Strauss, says this witness, was not willing that his tenure should be unseasonably cut off and his idea of building the bridge turned over to others. "The only way," said the attorney, "that we could possibly do that was by contract, inasmuch as, if Mr. Strauss had been permitted simply to act as engineer of the bridge district, he could resign whenever he felt like it and leave the bridge district in the lurch. On the contrary, unless he had a contract for the continuance of his term—until the bridge was complete—he had no assurance that a change in the personnel of the board would not result in dismissing him from office."

The relationship between the petitioner and the district, as defined in the contract, was incompatible with the relationship subsisting between that body and its officers as contemplated by the terms of the act. Petitioner was bound by his contract to perform his services and to see the project through to completion. He could not resign—a course which would be open to him were he a public officer. Nor could his services be dispensed with "at the pleasure of the board." The provision relating to the termination of the contract by the death of the engineer, or his inability to perform his duties to the satisfaction of the board, had a special and restricted purpose. It is plain from the whole contract that the inability which the parties had in mind was a disability comparable with that of death. The clause is not the equivalent of the statutory authority given the board to terminate the services of any officer at its pleasure.

The contract contained a clause to the effect that "due to the technical skill and knowledge peculiarly possessed by the engineer, this contract cannot be assigned, in whole or in part." No provision of this sort would have been thought necessary had either party regarded petitioner as an officer. Obviously no public officer may assign his office or post.

The whole nature of the transaction, including the huge outlays required to be made by petitioner in making available the services of an engineering staff, is incompatible with the idea that petitioner performed the services as a public officer. He was plainly an independent contractor. The case does not fall within the ruling of this court in Commissioner v. Harlan, 9 Cir., 80 F.2d 660, in which we held exempt the salary of the attorney of this district. Rather, it is controlled by the decision in Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384.

Judgment affirmed.

* The applicable revenue laws did not in terms authorize the exclusion from gross income of the salaries of officers or employees of a state or its political subdivisions. However, Treasury Regulations 77, Article 643, provided that "compensation paid to its officers and employees by a state or a political subdivision thereof for services rendered in connection with the exercise of an essential governmental function of the state or political subdivision, is not taxable."

On January 7, 1938, these regulations were amended to provide that "compensation received for services rendered to a state is to be included in gross income unless the person received such compensation from the state as an officer or employee thereof and such compensation is immune from taxation under the Constitution of the United States."